## UNITED STATES DISTRCT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| KATHERINE SARIGUMBA | **Case No. 25-CV-2578** |
| v. | Jury Trial Demanded |
| UNIVERSAL MUSIC GROUP, INC. | |

## ORIGINAL COMPLAINT & JURY DEMAND

### SUMMARY

1. Katherine Sarigumba ("Sarigumba") brings this lawsuit Universal Music Group, Inc. ("UMG") to recover damages caused by UMG unlawful, retaliatory termination of Sarigumba's employment in violation of the Fair Labor Standards Act ("FLSA").

2. Specifically, UMG unlawfully terminated Sarigumba's employment in retaliation for (1) participating in an FLSA lawsuit against the staffing company that staffed her to UMG (Leading Edge Connections, LLC ("LEC")), (2) filed a formal complaint with the Texas Workforce Commission ("TWC"), and (3) complaining that UMG improperly classified her as an independent contractor and failed to pay her overtime in violation of the FLSA.

### JURISDICTION & VENUE

3. This Court has original subject matter jurisdiction pursuant to 28 U.S.C.A. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. §§ 201, *et seq.*

4. This Court has specific personal jurisdiction over UMG based on its substantial contacts with, and direct towards, the State of Texas that form the basis of this lawsuit.

5. Venue is proper because a substantial part of the events or omissions giving rise to this action occurred in Harris County, Texas, which is in this District and Division. 28 U.S.C. § 1391(b)(2).

6. Specifically, Sarigumba worked for UMG in Houston, Texas

## PARTIES

7. Sarigumba worked for UMG as a Customer Service Representative in Houston, Texas from May 8, 2023 until May 27, 2024.

8. Throughout her employment, UMG misclassified Sarigumba as an independent contractor and refused to pay her overtime wages.

9. Sarigumba's written consent is attached as **Exhibit 1**.

10. UMG is a Delaware corporation headquartered in Santa Monica, California.

11. UMG may be served with process through its registered agent: **CT Corporation System, 330 North Brand Blvd, Suite 700, Glendale, California 91203.**

## FLSA COVERAGE

12. At all relevant times, UMG was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

13. At all relevant times, UMG was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

14. At all relevant times, UMG was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as tickets, music recordings, etc.—that have been moved in or produced for commerce.

15. At all relevant times, UMG has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

16. Despite misclassifying Sarigumba as an independent contractor, at all relevant times, Sarigumba was actually UMG's "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

17. Indeed, UMB treated Sarigumba as its employee and uniformly dictated the employment practices it applied to her.

18. UMG's misclassification of Sarigumba as an independent contractor does not alter her status as an employee for purposes of the FLSA.

19. At all relevant times, Sarigumba was engaged in commerce or in the production of goods for commerce.

**FACTS**

20. UMG bills itself as "the world leader in music-based entertainment."[1]

21. To meet its business objectives, UMG hires Customer Service Representatives, like Sarigumba.

22. Throughout her employment, UMG misclassified Sarigumba as an independent contractor to avoid paying her overtime wages.

23. But UMG did not hire Sarigumba on a project-by-project basis.

24. Rather, UMG hired and treated Sarigumba just like regular employees.

25. Despite misclassifying her as an independent contractor, UMG controlled all meaningful aspects of her employment.

26. UMG controlled Sarigumba's rate and method of pay (straight time for overtime).

---

[1] https://www.universalmusic.com/company/#organization (last visited June 4, 2025).

27. UMG controlled Sarigumba's schedule and assignments.

28. UMG controlled Sarigumba's work and job responsibilities.

29. UMG required Sarigumba to follow its policies, procedures, and protocols in performing her job as a UMG Customer Service Representative.

30. UMG required Sarigumba's work to strictly adhere to the quality standards UMG put in place.

31. Sarigumba was not required to possess any unique or specialized skillset (other than those maintained by all other Customer Service Representatives) to perform her job duties.

32. Indeed, Sarigumba's daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by UMG.

33. UMG predetermined virtually every job function Sarigumba performed, including the checklists, scripts, and forms to use; her schedule of work; and her related work duties.

34. Without the job Sarigumba performed, UMG would not be able to meet its business objectives of providing music-based entertainment to its customers.

35. Thus, the work Sarigumba performed was an essential and integral part of UMS's core music entertainment business.

36. Sarigumba relied on UMG for work and compensation.

37. Sarigumba could not contract out the work UMG assigned her.

38. Sarigumba did not substantially invest in the equipment and materials required to complete the overall job UMG assigned to her.

39. Rather, UMG incurred the large-scale business expenses, like marketing.

40. Sarigumba did not market her services while employed by UMG.

41. Sarigumba did not work other jobs while working for UMG.

42. At all relevant times, UMG maintained control, oversight, and direction of Sarigumba, including hiring, firing, disciplining, and other employment practices.

43. In sum, as a matter of economic reality, Sarigumba was UMG's employee.

44. Sarigumba worked for UMG as a Customer Service Representative in Houston, Texas from approximately May 2023 through May 2024.

45. Throughout her employment, UMG misclassified Sarigumba as an independent contractor to avoid paying her overtime.

46. But as outlined above, Sarigumba was, as a matter of economic reality, UMG's employee (and therefore entitled to overtime wages for her hours worked over 40 in a workweek).

47. But throughout her employment, Sarigumba did not receive overtime wages when she worked over 40 hours in a workweek.

48. Instead, Sarigumba received the same hourly rate for all hours worked, including those worked after 40 in a workweek (a practice known as "straight time for overtime").

49. Throughout her employment, Sarigumba repeatedly complained to UMG (including through her supervisors) that UMG unlawfully misclassified her as an independent contractor.

50. Likewise, throughout her employment, Sarigumba repeatedly complained to UMG (including through her supervisors) that she was entitled to (but not paid) overtime wages for her hours worked over 40 in a week.

51. In fact, in July 2023, Sarigumba filed a formal complaint with the TWC related to UMG misclassifying her and failing to pay her overtime wages.

52. Despite Sarigumba notifying UMG that she filed a formal complaint with the TWC, UMG attempted to silence her.

53. Indeed, UMG repeatedly threatened Sarigumba's continued employment when she complained about being misclassified as an independent contractor and/or not receiving premium overtime wages.

54. Notably, the TWC determined that UMG had misclassified Sarigumba as an independent contractor and owed her premium overtime wages.

55. And Sarigumba notified UMG of the TWC's determination.

56. Thus, on August 11, 2023, Sarigumba joined an FLSA overtime lawsuit against the staffing company that staffed her to UMG. *See Fields, et al. v. Leading Edge Connections, LLC*, No. 8:23-CV-01809-MSS-JSS (M.D. Fla.).

57. UMG was aware that Sarigumba had joined this FLSA collective action against its staffing company (LEC).

58. On May 23, 2024, Sarigumba resolved her FLSA overtime claims against LEC as part of that collective action.

59. Despite resolving her claims against LEC, Sarigumba continued to complain to UMG (through her supervisors) that she was misclassified as an independent contractor.

60. Indeed, Sarigumba repeatedly complained to UMG (through her supervisors) that it not only misclassified her as an independent contractor, but also her similarly situated coworkers.

61. And once again, UMG again tried to silence her by threatening her continued employment.

62. Ultimately, on May 27, 2024, in retaliation for (1) participating in an FLSA collective action, (2) filing a complaint with the TWC, (3) complaining to UMG for misclassifying her and her similarly situated coworkers as independent contractors, and (4) complaining to UMG for failing to pay her and her similarly situated coworkers premium overtime wages, UMG unlawfully terminated Sarigumba's employment.

63. In other words, UMG unlawfully terminated Sarigumba's employment in retaliation for engaging in protected activities under the FLSA in willful violation of the FLSA's anti-retaliation provisions.

## CAUSE OF ACTION

### RETALIATORY TERMINATION FOR ENGAGING IN PROTECTED ACTIVITIES UNDER THE FLSA
### 29 U.S.C. §§ 201, *ET SEQ.*

64. Sarigumba engaged in protected activities under the FLSA, including: (1) participating in an FLSA collective action, (2) filing a formal complaint with the TWC, (3) complaining to UMG for misclassifying her and her similarly situated coworkers as independent contractors, and (4) complaining to UMG for failing to pay her and her similarly situated coworkers premium overtime wages.

65. In retaliation for Sarigumba engaging in these protected activities, UMG terminated her employment.

66. In other words, UMG violated the FLSA by terminating Sarigumba's employment in retaliation for her engaging in protected activities under the FLSA.

67. UMG unlawful conduct harmed, and continues to harm, Sarigumba.

68. Specifically, as a result of UMG unlawfully terminating her employment, Sarigumba has suffered damages, including but not limited to loss of employment, loss of backwages and future pay, loss of past and future earning capacity, reputational harm, and mental anguish.

69. UMG was aware of the FLSA's anti-retaliation provisions but nevertheless retaliated against Sarigumba by terminating her employment for engaging in protected activities.

70. Thus, UMG's retaliatory conduct against Sarigumba was in willful disregard of the FLSA and Sarigumba's protected rights under the FLSA.

71. Accordingly, UMG owes Sarigumba is entitled to recover her past and future lost wages, plus treble damages, as well as her reasonable attorneys' fees and costs incurred in this action..

## JURY DEMAND

72. Sarigumba demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Sarigumba respectfully seeks the following relief:

a) An Order finding UMG liable to Sarigumba for lost past and future wages;

b) An Order finding UMG liable for treble damages;

c) A Judgment against UMG awarding Sarigumba all her lost past and future wages, treble damages, and any other penalties available under the FLSA;

d) An Order awarding attorneys' fees, costs, and expenses;

e) Pre- and post-judgment interest at the highest applicable rates; and

f) Such other and further relief as may be necessary and appropriate.

Dated: June 4, 2025

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS LLP**

By: */s/ Taylor A. Jones*
Taylor A. Jones
TX Bar No. 24107823
Fed. ID No. 3348814
1201 Fannin Street, Suite 202
Houston, Texas 77002
Phone: (832) 446-9403
Fax: (832) 356-2684
Email: tjones@hkm.com

**ATTORNEY IN CHARGE FOR SARIGUMBA**